# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2171

———————————————

United States of America

*Plaintiff - Appellee*

v.

Deon Daye

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

——————————

Submitted: April 12, 2021
Filed: July 21, 2021
[Published]

——————————

Before KELLY, GRASZ, and KOBES, Circuit Judges.

——————————

PER CURIAM.

In 2017, Deon Daye pleaded guilty to making false statements before a grand jury while under oath. See 18 U.S.C. § 1623. The district court[1] sentenced him to 33

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

months' imprisonment and a three-year term of supervised release. Daye completed the initial term of imprisonment. He now appeals the district court's[2] second revocation of supervised release and challenges the revocation sentence of 12 months' imprisonment as substantively unreasonable. We affirm.

I.

Daye began serving his first term of supervised release on June 7, 2019. The district court revoked his supervised release five months later after he admitted to violating its terms by failing to participate in substance abuse testing, failing to comply with mental health treatment, and committing assault. The court then sentenced Daye to five months' imprisonment for the violations and imposed a two-year term of supervised release. Daye began serving that new term of supervised release on March 6, 2020.

Several weeks later, on April 23, 2020, Daye's probation officer petitioned the district court to again revoke Daye's supervised release on the basis of a police report alleging that he had assaulted his ex-girlfriend, Sarah Bates.[3] See Iowa Code. §§ 708.2A(5) (2017) (domestic abuse assault by strangling), 708.2(2) (2010) (assault causing bodily injury or mental illness).[4] According to the police report, on April 22, 2020 an officer responded to a domestic disturbance call from Bates and found her sitting in her car with a bloody nose and swelling above her right eye. Bates told the officer that she and Daye had just broken up and that she got into an altercation with

_____

[2]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

[3]To protect the identity of Daye's ex-girlfriend, who is not a party to this case, we refer to her using the pseudonym Sarah Bates.

[4]The police report also refers to a charge for criminal mischief, id. § 716.1 (2002), but the district court's primary concern was the assault charge.

him and his sister when she drove to his house to pick up her belongings. Bates remained inside the car while Daye carried her things to the vehicle. Daye's sister began shouting insults at Bates and walked toward her car. Daye asked Bates, "What are you saying to my sister?" and pulled open the driver's-side door of Bates's car. He then put his hands around her neck, briefly choking her. Daye and his sister each punched Bates in the face multiple times. Bates was eventually able to drive away from the scene and called the police shortly thereafter.

Daye contested the violation, and the district court held an evidentiary hearing on June 4, 2020. The government introduced into evidence the video from the responding officer's body camera, which captured Bates's contemporaneous description of the night's events. Bates, who had by then reconciled with Daye, also testified at the hearing. She testified that Daye never punched her and that she told the officer he had only because she was upset with Daye at the time. During cross-examination, Bates acknowledged that her goal in testifying was to "get Mr. Daye out of jail." She also said that she "blacked out" after Daye's sister punched her and had "no memory of the next several seconds." Daye testified on his own behalf, maintaining that he never assaulted Bates. At the conclusion of the hearing, the district court found that the government had met its burden of proving the supervised release violation by a preponderance of the evidence.

## II.

"A district court may revoke supervised release if the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release." United States v. Staten, 990 F.3d 631, 635 (8th Cir. 2021) (per curiam) (cleaned up); see 18 U.S.C. § 3583(e)(3). We review the district court's decision to revoke supervised release for an abuse of discretion and any factual determinations underpinning the revocation, including findings regarding witness credibility, for clear error. United States v. Richey, 758 F.3d 999, 1001 (8th Cir. 2014). "Clear error

exists where, viewing the record as a whole, we are left with the definite and firm conviction that a mistake has been committed." United States v. Finley, 612 F.3d 998, 1002 (8th Cir. 2010) (cleaned up).

In support of its decision to revoke Daye's supervised release, the district court explained that it found Daye's and Bates's hearing testimony not credible. Instead, the court relied on Bates's statements to the officer on the scene, as reflected in the officer's body camera video. A district court's credibility determinations concerning witness testimony at a supervised release hearing "are virtually unreviewable on appeal," United States v. Ralph, 480 F.3d 888, 890 (8th Cir. 2007), and we see nothing in the record that suggests the district court in this case clearly erred in evaluating that testimony. In discounting Bates's hearing testimony, the court cited her demeanor and her difficulty maintaining a consistent, logical narrative in response to questioning, and expressed the view that Bates's statements to the officer on the night of the assault "r[a]ng true." The court also relied on other evidence corroborating Bates's initial description of the assault, including subsequent jail phone calls between Bates and Daye. We discern no clear error in the district court's assessment of the evidence, nor any abuse of discretion in the court's decision to revoke supervised release.

Daye has already finished serving the 12-month term of imprisonment imposed by the district court. Because he challenges only the term of imprisonment and not the new term of supervised release, his appeal of the sentence as substantively unreasonable is moot. See Owen v. United States, 930 F.3d 989, 990–91 (8th Cir. 2019) (dismissing appeal of revocation sentence as moot where defendant had already completed the term of imprisonment and did not challenge the term of supervised release).

For these reasons, we affirm the judgment of the district court.

_____